* * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence. Accordingly, the Full Commission adopts the Opinion and Award of the Deputy Commissioner with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant at all relevant times.
3. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter.
4. All parties are correctly designated and there is no question as to misjoinder or nonjoinder of parties.
5. Defendant is a duly qualified self-insured.
5. Plaintiff's average weekly wage was $482.63, with the resulting compensation rate of $321.77.
6. The parties stipulated the following documents into the record:
 a. Plaintiff's medical records from Dr. Lloyd Hey.
 b. Plaintiff's medical records from Dr. Carol Epling.
 c. Plaintiff's medical records from Duke University Medical Center.
 d. Plaintiff's medical and case management records from Inter Care and Corvel.
 e. Industrial Commission Forms 18, 19, 33, 33R and 61.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 44 years old. Plaintiff has a high school education and two years of additional vocational training in food service. Plaintiff worked for defendant as a floor finisher/maintenance worker for 14 to 15 years, with the responsibility for cleaning several research buildings at Duke University.
2. Prior to his injury on August 28, 2001, plaintiff had received treatment for his back due to earlier accidents, but he had always returned to work, despite being in some pain. He has high blood pressure, diabetes, and long-standing problems with his vision to the point that he has never been licensed to drive.
3. On August 28, 2001 plaintiff suffered a compensable injury to his back while lifting a vacuum at work. Plaintiff went initially to the emergency room and was referred to Dr. George Jackson at Employee Occupational Health and Wellness Services at Duke University. Dr. Jackson diagnosed lumbosacral strain.
4. Plaintiff eventually came under the care of Dr. Lloyd Hey, orthopedic surgeon, who diagnosed low grade spondylolisthesis at L5-S1 and spondylolysis. Plaintiff ultimately underwent a laminectomy and L5-S1 fusion as performed by Dr. Hey on September 25, 2002.
5. Following surgery, plaintiff was treated conservatively including a course of physical therapy consisting of walking, stretching exercises, aquatic therapy, and some weight lifting.
6. On April 24, 2003, Dr. Hey examined plaintiff. On reviewing an x-ray, Dr. Hey noted a crack in one of the right S1 screws but indicated that the fusion was well healed in spite of the cracked screw. There is no indication in the medical records that the cracked screw would become problematical. Dr. Hey deemed plaintiff to be at maximum medical improvement. Dr. *Page 4 
Hey assigned a permanent partial impairment rating of 25% to plaintiff's back and released plaintiff to return to work light duty with restrictions that included no lifting greater than 25 pounds.
7. Dr. Hey referred plaintiff to Dr. Carol Epling in the division of Occupational and Environmental Medicine of Duke Employee Health for continuing pain management. Plaintiff first saw Dr. Epling on May 15, 2003. Dr. Epling diagnosed plaintiff as having chronic pain and status post lumbar fusion complicated by depression. Plaintiff continues to see Dr. Epling approximately once a month to discuss his physical progress, pain levels, and work rehabilitation.
8. Dr. Epling referred plaintiff to Dr. Leslie Phillips, a psychiatrist, to treat his depression. Plaintiff testified that he treated with Dr. Phillips 8 to 12 times for depression. Plaintiff is currently taking medication for his depressive symptoms as prescribed by Dr. Epling.
9. Plaintiff returned to Dr. Hey in September 2003 and Dr. Hey noted that one of the pedicle screws in plaintiff's back had cracked. Dr. Hey further noted that despite the one cracked screw, there did not appear to be a pseudoarthrosis at that level and that there was good fusion mass and the screws appeared to be tight. Dr. Hey reduced plaintiff's maximum weight lifting from 25 pounds to 5 pounds. There is no indication as to the basis for Dr. Hey's decision to lower plaintiff's permanent weight restriction at that time. There is no indication that evidence of the cracked pedicle screw factored into Dr. Hey's decision. In fact, the cracked screw was apparent at the time Dr. Hey offered his initial rating and recommendation of a 25-pound lifting restrictions in April 2003.
10. Upon receipt of Dr. Hey's new restrictions, Dr. Epling consulted with Dr. Hey, expressing concern that the lowered lifting restriction would significantly hamper plaintiff's *Page 5 
ability to return to work. After the consultation, plaintiff's lifting restriction was raised to 10 pounds, which is the permanent lifting restriction now in place. In addition to lifting, plaintiff is restricted to no pulling or pushing greater than ten pounds.
11. Dr. Epling testified that based on plaintiff's medical condition, he would be able to participate in some sort of gainful employment. Dr. Epling was then shown a job description for the position of Senior Housekeeper at Duke University. Dr. Epling testified that the description of the Senior Housekeeper position was, on its face, within plaintiff's restrictions. However, Dr. Epling conceded that the vacuum cleaner that plaintiff would use may weigh more than 10 pounds as would the trash bags he would be required to lift. Dr. Epling also noted that plaintiff could pull something on rollers that weighs quite a bit more than ten pounds but not exceed ten pounds of actual force required to do that. Ultimately defendant was unable to offer the job to plaintiff, as it was not available. Even if the job were available, the description of the position is not specific enough to find that it would be suitable and fall within plaintiff's restrictions without modification. Therefore, this job cannot be determined to be suitable employment.
12. At the time of the hearing before the Deputy Commissioner, the plaintiff was taking six different prescription medications for his back injury. These medications include: Skelaxin (muscle relaxant), Ambien (sleep aid), Ibuprofen, Percocet (pain management), Celexa (depression) and Nortriptyline. Plaintiff testified that taking these medications does alleviate his pain but also makes him feel sleepy and tired and that these medicines affect his concentration levels. However, Dr. Epling testified that this combination of medicine has provided plaintiff optimal functioning, that plaintiff has been able to come to the clinic and function quite well during the clinic visits, and that plaintiff has not reported difficulty with drowsiness. *Page 6 
13. In October 2003, Mr. Paul Goodney, a vocational rehabilitation counselor with Rehab Management, Inc., was assigned to provide vocational rehabilitation services to plaintiff. Mr. Goodney prepared an Individual Written Rehabilitation Plan (hereinafter IWRP), which he testified was a very necessary step in the rehabilitation process. Mr. Goodney spent considerable time and effort working with plaintiff on the IWRP, explaining the elements to plaintiff, developing the plan itself and putting it in writing but plaintiff refused to sign it. Plaintiff could present no valid reason for refusing to agree with the IWRP by signing it.
14. In a letter from plaintiff to Mr. Goodney dated February 19, 2004, plaintiff asked that Mr. Goodney be removed from his case as soon as possible by reason of "conflicts of interest" and the fact that Mr. Goodney, in collaboration with plaintiff's attorney at that time, were working against plaintiff.
15. Mr. Goodney opined that while plaintiff presented particular challenges, he would be willing to continue working with plaintiff and that he had helped other clients with similar challenges return to work in a shorter period of time.
16. At this time, the plaintiff remains out of work receiving ongoing total disability benefits. There has not been an offer of suitable employment provided to the plaintiff at or near his pre-injury wage earning capacity.
17. The parties disagree as to whether plaintiff has fully cooperated with vocational rehabilitation. Reasonable vocational rehabilitation procedures have not been fully implemented because of plaintiff's difficult way of behaving. However, plaintiff could benefit from vocational rehabilitation assistance and it is in plaintiff's best interest to fully comply. *Page 7 
18. Based upon the greater weight of the competent, credible evidence, the Full Commission finds that plaintiff is not permanently and totally disabled from employment. However, plaintiff has proven that he is still temporarily, totally disabled.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. At this time, the evidence establishes that plaintiff has been unable to earn the same wages as prior to his injury by accident in the same or any other employment, based upon his age, experience, education and physical restrictions. Defendants have not offered suitable employment and there is no evidence that any other suitable employment was available. At this time, plaintiff continues to be temporarily, totally disabled. Therefore, plaintiff is entitled to receive ongoing benefits for temporary, total disability. N.C. Gen. Stat. § 97-29.
2. Defendants are required to provide plaintiff with reasonably necessary medical treatment related to his compensable back injury by accident that tends to effect a cure, provide relief, or lessen the period of disability, including vocational rehabilitation. Plaintiff shall be obligated to make a good faith effort to participate in any reasonable vocational rehabilitation. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1.
3. Plaintiff has failed to establish by the greater weight of the evidence that his current inability to earn wages is permanent, such that at this time he should be declared to be permanently and totally disabled. N.C. Gen. Stat. § 97-2(9); Russell v. Lowes ProductionDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). *Page 8 
4. The attorneys who have represented plaintiff in this matter are entitled to reasonable fees. Plaintiff's prior counsel include Terry Kilbride, Branch "Chip" Vincent, Benjamin Cochran, and John Hedrick, his current attorney. A reasonable fee shall be set, taking into consideration the fact that plaintiff has been receiving ongoing benefits.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Defendants shall continue to pay plaintiff compensation at the rate of $321.77 per week as temporary total disability until plaintiff returns work or until further Order of the Commission.
2. Considering that plaintiff was already receiving ongoing benefits, a reasonable attorney's fee of $3,200 is approved for plaintiff's counsels, to be paid to plaintiff's current and prior counsels. Defendants shall deduct twenty-five percent of plaintiff's ongoing weekly compensation payments and pay the same to plaintiff's current counsel of record, John Hedrick, until the fee is satisfied. It shall be the responsibility of the plaintiff's current and prior attorneys to allocate the fee among themselves.
3. Plaintiff's request for a declaration that he is permanently and totally disabled is HEREBY DENIED.
4. Plaintiff is HEREBY ORDERED to fully comply with all reasonable and prescribed medical and rehabilitative treatment under the supervision of as assigned Industrial Commission Nurse. The assigned nurse shall assist the parties in a referral to North Carolina *Page 9 
Division of Vocational Rehabilitation Services for evaluation and any further medical and vocational activities related to this claim. N.C. Gen. Stat. § 97-25.
5. Defendants shall pay the costs.
 * * * * * * * * * * * ORDER
While this matter was pending before the Full Commission, plaintiff filed a Motion to Approve Past and Future Medical Treatment. In particular, plaintiff requested an Order approving Dr. Partidge, plaintiff's family physician, as a treating physician to provide pain management in place of Dr. Epling. Defendant filed a Response in opposition to the Motion.
Based upon a review of the Industrial Commission records in the matter, as well as plaintiff's Motion and defendant's Response, plaintiff's Motion is DENIED. IT IS ORDERED that the parties shall agree upon a pain management physician to resume treatment of plaintiff's care in place of Dr. Epling. Said doctor shall not be associated with Duke University.
This the 14th day of September 2007.
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ BERNADINE S. BALLANCE COMMISSIONER *Page 10 
S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1